Thank you to counsel. Our final case of the day is Martinez-Martinez v. Bondi. Mr. Budzinski, whenever you're ready. Hold on. Let's let Ms. Roberts kind of get settled in here. Okay, go ahead. Good morning, your honors. Budzinski for petitioners. Two issues in this case, whether substantial evidence supports the agency's conclusion that petitioners did not establish that the Honduran government is unable or unwilling to protect them, and that petitioners could not reasonably relocate in Honduras to avoid harm. Beginning with unable or unwilling to protect, the agency reached its conclusion because Martinez never sought assistance from the police, because Honduran authorities investigated, prosecuted, and imprisoned some of the people responsible, and because Celio Rodriguez is wanted in Honduras, although he has been on the run for about a decade now. The agency also contended that the country conditions evidence, which indicated that Honduran efforts to combat this violence was inadequate, was outdated. Did your client raise either of those issues before the Board of Immigration Appeals? Yes, I believe so, your honor. Their arguments vary to some extent with the arguments raised here on appeal, but the larger issue was raised on both of those. First, that Martinez never sought assistance from the police is immaterial. Authorities were already aware of this violence and ostensibly investigating. Martinez explained that the police would come, but they never did anything. The country conditions evidence corroborates this claim, that these investigations were a sham. It doesn't make sense to seek assistance from the police when they are already aware of the violence and ostensibly investigating. Additionally, it would have been futile under the circumstances. Again, the investigations were a sham, and reporting persecution is not required when it would be futile. Second, the Honduran authorities were eventually able to apprehend some of the perpetrators. It's undercut by the fact that others remain at large, including the primary perpetrator of this violence, Celio Rodriguez. Additionally, the violence has not stopped. There was another murder as recently as a year before the petitioner's merits hearing. The same can be said for Celio Rodriguez. While he is wanted in Honduras, the inability of authorities to apprehend him, the primary perpetrator of this violence, for about a decade now is telling. On the purportedly out-of-date country conditions evidence, the article in question is from 2014. Petitioners left Honduras in 2016, and the violence that petitioners experienced occurred reasonably close in time, around 2015. The contention is also undercut by the fact that the Department of State report indicates that the violence continued, although far below its peak. And it's also undercut by Martinez's testimony to the same effect, including a murder a year before her merits hearing. That the primary perpetrator remains free, and the fact that the Department of State report indicates that the peak occurred in 2012, before the 2014 article, and before the violence that petitioners experienced. Indeed, all of the violence that they experienced occurred after this peak. Turning to internal relocation, the agency reached its conclusion on this issue, because Martinez's decision to be a part of this organization, MUCA or M-U-C-A, and live at La Confianza was purely voluntary. Because Martinez's belief that she would be targeted anywhere was not reasonable, and because she cited only one incident in which someone was killed outside of La Confianza. And because this person killed had valuable information about the criminal activity of Celio Rodriguez and his associates. Additionally, because Martinez has family members still in La Confianza. Beginning with the voluntariness of her membership in this organization, it is inapposite to the issue and not accurate. It's inapposite to the issue because even if Martinez can physically leave, she would still be a target due to her past association, her opposition to Celio Rodriguez, and her knowledge of their activities. This is what happened to Henry Armendariz. He left, they followed, or sent someone to San Pedro Sula, and they killed him. It is inaccurate because Martinez had to join the organization because there was no other work available to her, and she had nothing to eat. Martinez explained that this is why she would not be able to go work somewhere else. Being a part of this organization is not voluntary if you have to do it to survive. This also goes to the reasonableness of relocation. That is, it's not reasonable to expect Martinez to relocate if she cannot find work elsewhere. The immigration judge did not address reasonableness, and the internal relocation inquiry is really two. Whether relocation would be successful and whether relocation would be reasonable, the immigration judge only addressed the former. On the immigration judge's contention that Martinez's belief that she would be targeted anywhere was not reasonable because she only knew one person killed outside La Confianza, one is enough to make it reasonable. They killed someone outside of La Confianza, they can do it again. On the immigration judge's related point that Martinez is not similarly situated to this person because he had valuable information, Martinez also has valuable information. This was obviated by her testimony. She testified at length about their criminal activities. On the immigration judge's last concern that Martinez has family in La Confianza who have not been harmed, as mentioned, Martinez has information about Celio Rodriguez and his associates. Additionally, she previously had a confrontation with one of Celio Rodriguez's associates, and prior to her departure, people were seen looking through the windows of her home. Respondent argues that petitioner's argument regarding the voluntariness of Martinez's membership in the organization really goes to weight. It's belied by her testimony that she could leave it and that economic hardship is just one consideration. First, it doesn't go to weight. Petitioners are arguing whether she could leave is inapposite to the issue, that it does not matter whether she could leave because she would still be targeted. On Martinez's testimony that she could leave, both the immigration judge and respondent are conflating whether she's permitted to leave the organization or whether leaving is something she could realistically do, and realistically she cannot because she would have no other way to provide for herself. Respondent also addresses petitioner's use of the word enough in their brief as it relates to Henry Armendariz being murdered outside of La Confianza, arguing that petitioners are disputing evidentiary weight. No, here they are arguing that the immigration judge's conclusion that it would not be reasonable for Martinez to believe she could be harmed outside of La Confianza is not supported by substantial evidence because Henry Armendariz was killed outside of La Confianza and Martinez is similarly situated. If there are no questions, I will reserve the remainder of my time for rebuttal. Thank you. Ms. Roberts. Thank you, Your Honors. May it please the Court. Roberta Roberts on behalf of the United States Attorney General. Substantial evidence supports the agency's dispositive, able and willing and internal relocation findings and record evidence does not compel a contrary conclusion. First, petitioner's arguments to this court are unexhausted and therefore should not be considered and because petitioners failed to exhaust challenge to issues dispositive of their claim, the court should deny the petition for review. Second, even if the court were to consider these unexhausted arguments, they fail on the merits. For example, addressing petitioner's unexhausted, unable or unwilling argument, the record does not compel that the Honduran government was unable or unwilling or is unable or unwilling to protect the petitioners. In this record, both petitioner's own testimony and as seen in the 2018 State Department Country Conditions Report, we see that the Honduran government created a task force to address the violence in this specific area, the Bajo Agüen Task Force. They had transnational coordination with Mexican law enforcement authorities and INTERPOL to arrest and extradite Osmond, the main hitman who petitioner testified about being afraid of. The Honduran government took extensive measures to bring Osmond to justice. As mentioned, a task force was created. Transnational coordination with Mexican law enforcement authorities and INTERPOL to arrest, extradite, prosecute, convict and imprison this person. That shows that the Honduran government is both able and willing to protect petitioners. Indeed, petitioner herself testified that not only was Osmond imprisoned, but several other members were imprisoned as well. This shows that petitioners are not able to meet their burden of showing that the record compels a contrary conclusion. Indeed, the record shows that substantial evidence supports the conclusion that the Honduran government is able and willing to protect petitioners. Briefly, to keep it short, I'll note one additional point. That petitioners say that one of the ringleaders, the mastermind, is on the run. And that demonstrates that the Honduran government is not effective in its protection. However, one, it shows that because this person is on the run instead of committing additional crimes in Honduras, that further shows the effectiveness of the Honduran government and that they are not unable or unwilling to protect petitioners. In fact, the murder that was the most recent murder from 2018, 2018 was also the year that Osmond, the main hitman, was captured and prosecuted. And petitioners did not testify to any other murders that occurred after this transnational effort with Interpol. Petitioner's hearing was in September of 2019, and the most recent murder that she testified to was in 2018. And finally, as case law says in the circuit, for example, Osorio Morales v. Garland, it says here that this court has upheld rulings that a government is not unable or unwilling to protect its victims from persecution, where the record reflects that the government has taken some steps, even imperfect ones, toward protecting victims. And in this case, the government has taken not just some steps, but extensive steps to protect those here. So even addressing petitioner's point about one person still being on the run, that is not enough to meet the burden to say that the record compels a contrary finding to what the agency found. Ms. Roberts, with regard to the relocation issue, does the agency take into consideration whether a particular individual can or cannot find employment in a particular region of the country in determining whether or not relocation is reasonable? Yes, Your Honor, that is a consideration that is taken into account. And also, it is the petitioner's burden to provide evidence of, you know, any difficulties that they may or may not have in finding employment in the country of relocation, especially because as petitioners emphasize, they are not seeking a past persecution claim, but a future persecution claim. So they have the burden of proof in demonstrating that internal relocation would be unreasonable. And unfortunately, in this case, they did not meet that burden. She did say that she doesn't think she can get employment in other regions of the country, right? Is that not enough? That would not be enough because petitioner, for example, did not provide any evidence as to why she would not be able to obtain employment in another area of the country. Is there any particular characteristic that she has or some type of skills that she has or does not have that means that she cannot obtain employment in another area of the country? These are things that are on the petitioner to bring as petitioner is the one who has the burden of proof in demonstrating those things. And because petitioner did not do that in this case, petitioner also, that is another independently dispositive issue that petitioner did not meet their burden on. So on both the unable and unwilling issue and the internal relocation issue, petitioners failed to meet their burden. And therefore, respondent would argue that for the reasons stated today and in the brief that the petition for review should be denied unless your honors have any additional questions. Thank you, Ms. Roberts. Thank you, your honors. Mr. Brzezinski, anything else? On exhaustion, in Y vi escondido, the Supreme Court tells us that once a claim is properly presented, parties are not limited to the precise arguments made below. Any argument can be made in support of the claim on appeal. Turning to unable or unwilling, again, others remain free. Violence continued. And while Celia Rodriguez was on the run, more crimes did occur. Again, another person was killed in 2018. And if there are no questions. Thank you. Ladies and gentlemen, that concludes the arguments for today. The court is in recess.